FILED
2020 May-06 PM 11:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT 27

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| ARCHILLA, *et al.*,<br><br>    *Petitioners-Plaintiffs*,<br><br>v.<br><br>WITTE, *et al.*,<br><br>    *Respondents-Defendants*. | Civil Action No.: 4:20-cv-596-RDP-JHE |

**DECLARATION OF AARON REICHLIN-MELNICK**

    I, Aaron Reichlin-Melnick, make the following declaration based on my personal knowledge and declare under the penalty of perjury pursuant to 28 U.S.C. § 1746, that the following is true and correct.

    1.    I am a Policy Counsel at the American Immigration Council ("Immigration Council"), a nonprofit and non-partisan organization whose mission includes the use of facts to educate the public on the important and enduring contributions that immigrants make to America.

    2.    I make this Declaration in order to show that, based on comprehensive available data, the vast majority of noncitizens who are in removal proceedings, but who are not detained, nevertheless appear for scheduled removal hearings. Individuals who have been in the United States for at least one year appear for removal hearings 88% of the time, rising to 91% for those who have been in the United States for more than ten years. For those noncitizens who have

1

counsel, the appearance rate approaches 100%. As every plaintiff in this case is a long-time resident of the United States, this data demonstrates, in my opinion, that the asserted governmental interest in ensuring appearance at court hearings and preventing flight risk does not justify declining to release noncitizens who are at risk of contracting COVID-19.

### Basis for Opinion

3. At the Immigration Council, I track and analyze immigration-related statistics produced by the Department of Homeland Security ("DHS") and the Executive Office for Immigration Review ("EOIR"), including trends in the appearance rate of asylum seekers and other noncitizens placed into detention. In my role as Policy Counsel, I have previously submitted declarations analyzing government-produced immigration statistics.[1]

4. I am familiar with the universe of relevant public statistics published by DHS and EOIR. One of the key statistics that I study in my role as Policy Counsel is the appearance rate of noncitizens who are placed into removal proceedings. I am the principal author of a July 2019 Immigration Council publication on the rate that noncitizens appear in removal proceedings.[2] I am also the author of an op-ed for the Wall Street Journal explaining the fundamental flaws in EOIR's current methodology for reporting the rate at which noncitizens appear in court.[3]

5. In preparation for this declaration I have extensively reviewed all public material produced by EOIR on the appearance rates of noncitizens in court, as well as data on removal hearings from Fiscal Year ("FY") 2001 through March 2020 that is made public through

---

[1] *Innovation Law Lab v. Wolf*, 3:19-cv-00807-RS (N.D. Cal. filed Feb. 14, 2019), *Padilla v. ICE*, No. 2:18-cv-00928-MJP (W.D. Wash. filed June 25, 2018), *East Bay Sanctuary Coalition II v. Wolf*, 3:19-cv-04073-JST (N.D. Cal filed July 16, 2019).
[2] American Immigration Council, Immigrants and Families Appear in Court: Setting the Record Straight (2019), *available at* https://www.americanimmigrationcouncil.org/research/immigrants-and-families-appear-court.
[3] Aaron Reichlin-Melnick, *Trump's Bad Immigration Math: In absentia' rates grossly overstate asylum-seekers' propensity to skip court.*, W.S.J., July 30, 2019, https://www.wsj.com/articles/trumps-bad-immigration-math-11564526852.

2

Syracuse University's Transactional Records Access Clearinghouse Center ("TRAC"), a nonpartisan academic center which obtains EOIR data through the Freedom of Information Act.

6. Analysis of this data reveals that most noncitizens placed in removal proceedings appear in court. Over the past decade, more than 80% of all noncitizens placed in removal proceedings inside the United States[4] appeared for every scheduled removal proceeding. Those represented by counsel were overwhelmingly likely to appear for every scheduled hearing, at a rate of 97%. Furthermore, since Fiscal Year 2014, noncitizens released from detention were *more* likely to appear in court than those who had never been detained in the first place.

### Background of Removal and Appearance Process

7. When a respondent in immigration court fails to appear, an immigration judge will generally order the respondent removed for failure to appear.[5] Importantly, the issuance of a removal order for failure to appear does not mean that the respondent absconded. Many people fail to appear through no fault of their own, either because they were not properly served with a hearing notice or because an extraordinary circumstance prevented their appearance. In many of those situations, individuals may file a motion to reopen. *See* 8 C.F.R. § 1003.23(b)(4)(ii).

8. Many respondents successfully overturn an order of removal for failure to appear. Accounting for cases in which a removal order for failure to appear is overturned "significantly impacts and reduces the [failure to appear] rates." *See* TRAC, What Happens When Individuals

---

[4] Throughout this declaration, I have excluded all cases of noncitizens placed into the Migrant Protection Protocols ("MPP"), a DHS program in which asylum seekers are not permitted to enter the United States but are instead placed into removal proceedings and sent to Mexico, where they must periodically return to a port of entry to access their scheduled removal proceedings. Because MPP cases are categorically different than those that occur inside the United States, they have been excluded.

[5] 8 C.F.R. 1003.26(c) provides that when a respondent "fails to appear, the Immigration Judge shall order the alien removed in absentia if" the government proves by clear and convincing evidence that the respondent is removable and that the respondent received notice of the hearing and of the consequences of failing to appear.

Are Released On Bond in Immigration Court Proceedings?, at n. 7 (Sept. 14, 2016), available at https://trac.syr.edu/immigration/reports/438/.

9. Qualitative research into "in absentia" orders of removal suggests that filing errors at either DHS or EOIR are the underlying cause of many failures to appear. CLINIC & Urban Justice Ctr., *Denied a Day in Court: The Government's Use of In Absentia Removal Orders Against Families Seeking Asylum* (Mar. 2019), *available at* https://cliniclegal.org/resources/removal-proceedings/denied-day-court-governments-use-absentia-removal-orders-against. One example of this kind of bureaucratic mistake included in the report is an asylum seeker who received two letters in the mail on the same day, one telling her to appear in court the week prior, and another telling her she had been ordered removed for missing that hearing. *Id.* at 19. She successfully reopened her case. *Id.* As part of the report, attorneys successful overturned 34 out of 36 orders of removal for failure to appear.

**Data Analysis Demonstrating that a Significant Majority of Noncitizens Appear for Every Removal Proceedings**

10. From FY 2009 through March 2020, a total of 1,948,699 cases have been filed in which at least one scheduled hearing for a person who was not detained ("nondetained hearing") has occurred. Out of these nearly two million cases, the noncitizen has appeared for every scheduled nondetained hearing in 1,571,923 cases—80.7% of the time. This roughly 80% appearance rate for all noncitizens placed in nondetained removal proceedings has been largely consistent since about FY 2007 (see Figure 1).

**Fig. 1: Percent of Nondetained Respondents That Appeared at Every Hearing**
by fiscal year that a case was begun



Source: TRAC, *State and County Details on Deportation Proceedings in Immigration Court*,
https://trac.syr.edu/phptools/immigration/nta/
\* MPP cases excluded from FY2019 and FY2020

11. Those noncitizens who are represented by counsel are even more likely to appear. From FY 2009 through March 2020, a total of 1,364,641 cases were filed in which the respondent was represented by counsel and at least one scheduled nondetained hearing has occurred. Out of these cases, the noncitizen has appeared for every scheduled nondetained hearing in 1,326,274 cases—97.2%.

12. This extremely high appearance rate for respondents who are represented by counsel has been consistent for decades (see Figure 2). This is one of the reasons why representation by counsel may be the most significant factor in the outcome of removal proceedings. *See* American Immigration Council, *Access to Counsel in Immigration Court* (Sept. 2016) (noting that "Represented immigrants who were never detained were nearly five times more likely than their unrepresented counterparts to obtain relief if they sought it.").

5

**Fig. 2: Percent of Represented Nondetained Respondents That Appeared at Every Hearing**
by fiscal year that a case was begun



Source: TRAC, *State and County Details on Deportation Proceedings in Immigration Court*,
https://trac.syr.edu/phptools/immigration/nta/
* MPP cases excluded from FY2019 and FY2020

13.     Appearance rates vary among different groups placed into removal proceedings. Three groups in particular have a higher appearance rate than the average: asylum seekers who have been found to have a credible fear of persecution, individuals released from ICE detention, and individuals who have been present in the United States for significant periods of time and have put down roots—that is, made a home here.

14.     Over the last decade, an order of removal for failure to appear was issued in an estimated 12.6% of cases originating with a credible fear claim. From FY 2008 through FY 2018, a total of 345,356 cases were referred to the immigration courts following a credible fear claim (see Fig. 2). *See* EOIR, *Rates of Asylum Filings in Cases Originating with a Credible Fear Claim* (Nov. 2, 2018), *available at* https://www.justice.gov/eoir/page/file/1062971/download. Over the same time period, immigration judges issued 43,476 orders of removal in absentia for failure to appear in cases originating with a credible fear claim (see Fig. 1). *See* EOIR, *In*

6

*Absentia Removal Orders in Cases Originating with a Credible Fear Claim* (Oct. 23, 2019), *available at* https://www.justice.gov/eoir/page/file/1116666/download. Thus, over the past decade, evidence suggests that at least 87.4% of asylum seekers who went through the credible fear process appeared in immigration court for their scheduled removal proceedings, although some of those noncitizens may have been detained during proceedings.[6]

**Figure 3: Orders of Removal For Failure to Appear in Credible Fear Cases**
FY 2008 to FY 2018



15.     This high appearance rate for asylum seekers is supported by an Immigration Council report analyzing EOIR data from 2001-2016, which found that 86 percent of all families released from immigration detention had a perfect court attendance rate. Ingrid Eagly, Steven Shafer, & Jana Whalley, *Detaining Families: A Study of Asylum Adjudication in Family*

---

[6] EOIR data does not distinguish between proceedings that occurred inside detention with proceedings which occurred outside of detention. Therefore, this 87.4% appearance rate cannot be viewed as the appearance rate for all non-detained noncitizens who passed a credible fear interview. However, that asylum seekers would have a higher appearance rate than average is supported by the American Immigration Council study, *infra*.

7

*Detention* (2018), *available at* https://www.americanimmigrationcouncil.org/research/detaining-families-a-study-of-asylum-adjudication-in-family-detention. For families who managed to obtain counsel, the attendance rate rose to 96 percent. *Id.* at 23.

16. As with asylum seekers, those noncitizens who have been released from detention are also more likely to appear in court than the average rate of around 80%. From FY 2009 to March 2020, noncitizens who had been released from detention appeared in court 84.2% of the time, compared to just 79.5% of the time for noncitizens who had never been detained.

17. In every year since FY 2014, individuals released from ICE detention have appeared in court at higher rates than those never been detained in the first place (see Figure 4).



**Fig. 4: Percent of Nondetained Respondents That Appeared at Every Hearing**
by custody status and fiscal year that a case was begun

Source: TRAC, *State and County Details on Deportation Proceedings in Immigration Court*, https://trac.syr.edu/phptools/immigration/nta/
* MPP cases excluded from FY2019 and FY2020

18. Individuals who have been present in the United States for years—long enough to put down roots—are also more likely to appear in court than those who are recent arrivals at the border. For those respondents who have been present for at least one year, the appearance rate

8

never falls below 84% (see Figure 5). Noncitizens who have been present in the United States for ten or more years are overwhelmingly likely to appear. From FY 2009 through March 2020, a total of 117,894 cases were filed in which 1) at least one nondetained hearing occurred *and* 2) EOIR data indicates that the respondent had been present for at least ten years. Of these cases, the respondent appeared at every nondetained hearing in 107,507 cases—91.2%.

**Fig. 5: Percent of Nondetained Respondents That Appeared at Every Hearing**
by time in the United States at initiation of removal proceedings, FY 2009 to March 2020



Source: TRAC, *State and County Details on Deportation Proceedings in Immigration Court*,
https://trac.syr.edu/phptools/immigration/nta/
* Excludes MPP cases

EXECUTED this 6th day of May, 2020.

_____
AARON REICHLIN-MELNICK

9